**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **SYSTEM SOLUTIONS OF KENTUCKY, LLC** | ) | **CASE NO. 20-30891(1)** |
| | ) | |
| **Debtor** | ) | **Chapter 7** |
| | ) | |
| | ) | |

**TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT WITH W.K. KELLEY COMPANY, INC. PURSUANT TO BANKRUPTCY RULE 9019**

Comes now Robert W. Keats (the "Trustee") in his capacity as the chapter 7 trustee for the above-styled bankruptcy estate of System Solutions of Kentucky (the "Debtor"), and hereby files the *Trustee's Motion for Approval of Settlement Agreement with W.K. Kelley Company, Inc. Pursuant to Bankruptcy Rule 9019* (the "9019 Motion"). In support of this 9019 Motion, the Trustee provides as follows:

**BACKGROUND**

1. The Trustee's is charged by federal bankruptcy statute to complete certain duties in this case, including collecting and reducing to money the property of the bankruptcy estate and investigating the financial affairs of the debtor. See 11 U.S.C. § 704(a)(1, 4). To fulfill these duties, the Trustee has carefully reviewed and is continuing to review the assets and claims identified in the Debtor's Schedules and Statement of Financial Affairs.

2. The Debtor's Schedules, in part, identify certain assets that the Debtor owns or in which the Debtor may have an interest (*See generally* Debtor's Schedule A/B [Doc. No. 1]). These Schedule A/B Assets include "[c]auses of actions against third parties . . . ." (*See* Debtor's Schedule A/B, Part 11, Item 74). Item 74 in the Debtor's Schedules identifies a certain "Claim against W.M. Kelley, Co." for "unearned pre-payment and unused parts supplied" (the "W.M. Kelley Claim").

(See *Id.*). The W.M. Kelley Claim was filed and asserted by the Debtor in an Indiana state civil action styled as *Cause No. 22C01-1909-PL-1339, System Solutions of Kentucky, v. W.M. Kelley Co., Inc. v. Material Handling Systems, Inc.*, which is pending in the Floyd Circuit Court 1 (the "Indiana Civil Action.") (*See* Debtor's Statement of Financial Affairs, Part 3, Item 7).

3. The Trustee has completed thorough due diligence on the facts, circumstances, claims and issues surrounding or relating to the WMK Claim and the Indiana Civil Action. Based on the Trustee's due diligence, the Trustee believes in his business judgment that the WMK Claim is worth *de minimis* value, and that the Indiana Civil Action should be conclusively resolved and disposed of under the terms and conditions of the Settlement Agreement by and between the Trustee and the parties to the Indiana Civil Action, including (i) W.M. Kelley Company, Inc., ("WMK") and (ii) Material Handling Systems, Inc. ("MHS").[1] A copy of the Settlement Agreement is attached hereto as Exhibit A and is incorporated herein by reference.

**REQUEST AND BASIS FOR RELIEF**

4. By this Motion, the Trustee asks this Court to enter an order pursuant to Bankruptcy Rule 9019 approving the Settlement Agreement. The salient terms of the compromise within the Settlement Agreement are that WMK will pay the Debtor's estate seven thousand dollars ($7,000.00) in exchange for full and mutual releases of claims of all parties to the Indiana Civil Action.

5. Bankruptcy Rule 9019(a) provides that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

---

[1]MHS is also a party to the settlement agreement because WMK filed a Third-Party Complaint against MHS as part of the Indiana Civil Action. MHS has denied the claims and allegations of said Third-Party Complaint in its Answer filed in Indiana Civil Action, and the Debtor has no claims against MHS within the Indiana Civil Action.

*See* Fed. R. Bankr. P. 9019(a).

6. In reviewing the Settlement Agreement in accordance with Rule 9019, this Court must determine that it is fair and equitable and in the best interests of the estate. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968); *In re Bard*, 49 Fed. Appx. 528, 530 (6th Cir. 2002); *Lyndon Prop. Ins. Co. v. Katz*, 196 Fed. Appx. 383, 387 (6th Cir. 2006). Ultimately, it is largely accepted that settlements are favored in bankruptcy to minimize the cost of litigation to the estate and hasten its administration. *See, e.g.*, *In re West Point Prop., L.P.*, 249 B.R. 273, 282 (Bankr. E.D. Tenn. 2000).

7. Bankruptcy courts should consider the following four factors when determining whether to approve a proposed settlement: (1) the probability of success in the litigation of the claim being compromised; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of creditors and a proper deference to their reasonable views concerning the proposed compromise. *See Bard*, 49 Fed. Appx. at 530 (quoting *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929)). Under Rule 9019(a), this Court has broad discretion to approve or reject a proposed compromise, and orders approving settlements are reviewed for an abuse of discretion. *Bard*, 49 Fed. Appx. at 530. Each of the preceding factors supports the Debtor's estate's entry into and the Court's approval of the Settlement Agreement.

8. First, the probability of success (or lack thereof) in the litigation is nearly certain. The Indiana Civil Action and the WMK Claim asserted by the Debtor therein is for the collection of money and replevin of certain component parts used in the manufacture and assembly of conveyor and sortation equipment (collectively the "Parts"). The Debtor alleged that it shipped the Parts to WMK and/or third parties and that they were held by WMK for use in the assembly

and fabrication of conveyor belt projects. These Parts were to be ultimately installed at United Parcel Service ("UPS") shipping facilities, the primary project being a UPS facility in Goodyear, Arizona.

9. WMK has denied the claims and adverse allegations of said Complaint (including the WMK Claim) in its Answer filed on November 18, 2019, which the Trustee reviewed and considered. In addition to denying the allegations WMK has also filed a Counterclaim for Damages against Debtor and a Third Party Complaint against an additional party. The grounds for WMK"s denials and disputes, which the Trustee investigated and believes are compelling, include or involve the Debtor's lack of payment for the Parts, WMK's costs incurred for warehousing the Parts, and the WMK's costs incurred for removal of the Parts from its operating center due to non-completion of the underlying contract. Moreover, WMK is continuing to incur costs of warehousing the Parts. In addition, the initial purported material value of the uniquely manufactured Parts (which were specifically designed and anticipated for use in the UPS contracts) has been brought into question because the Parts will no longer be used in the specific specifications and design of the UPS projects. For these and other reasons, the Trustee decided to abandon the estate's interest in the Parts (to the extent any interest existed) believing that the bulk of the Parts were actually property of a third party, and not property of the estate since the property was not paid for. (*See* Docket Nos. 89 and 103).

10. Given the nature and circumstances of the Parts, the Trustee believes that prosecution of the Indiana Civil Action would be unsuccessful.

11. <u>Second</u>, for the reasons explained above, the Trustee believes that it would be difficult collecting damages on this matter because the likelihood of receiving an award for any

damages against WMK is remote, and there is a potential liability risk stemming from pending WMK Counterclaims asserted in the same action.

12. Third, this litigation would be complex and fact-intensive. Litigating this case through discovery, summary judgment, experts and trial could have been very expensive for the estate, especially given the unique nature of the Parts. Moreover, completing a trial would be a lengthy process that would could substantially delay any distributions to creditors.

13. Fourth, the paramount interest of creditors supports the settlement. Simply stated, quickly obtaining $7,000 is gross settlement proceeds for the estate is far better than wasting many months of time and limited resources to likely obtain nothing for the estate, or potentially a negative judgment.

14. For the foregoing reasons, the Trustee believes in his sound business judgment that the Settlement Agreement is fair and equitable and in the best interest of the Debtor's estate and its creditors.

WHEREFORE, the Trustee respectfully asks the Court to enter an order (a) approving the Settlement Agreement, and (b) for other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Robert W. Keats*

Robert W. Keats, Trustee
P.O. Box 221377
Louisville, Kentucky 40252-1377
Phone: (502) 587-8787
E-mail: rkeats@bellsouth.net

**CERTIFICATE OF SERVICE**

I certify the foregoing and proposed order was served in conformity with CM/ECF Rule 6.9, or, by delivering a true copy via first class mail to the service list on November 21, 2020.

*/s/ Robert W. Keats*
Robert W. Keats, Trustee